UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

JAMES EDWARD MILLER                                                              PLAINTIFF


v.                                                          CIVIL ACTION NO. 3:16-CV-00219-CRS


BULLITT COUNTY FISCAL COURT, et al.                                           DEFENDANTS

**MEMORANDUM OPINION**

I.    Introduction

James Edward Miller filed this action against Bullitt County Fiscal Court ("Bullitt County"), Delsie Williams, and other unknown Defendants. Verified Compl., ECF No. 1. This matter is before the Court on Bullitt County's motion for summary judgment, ECF No. 18, and its motion to dismiss for failure to comply with court order, ECF No. 25.

Bullitt County's motion to dismiss arose when Miller failed to respond to Bullitt County's present motion for summary judgment by the court-ordered date of September 16, 2016. Mem. Supp. Mot. Dismiss 1–2, ECF No. 25-1. Miller responded to the motion to dismiss, ECF No. 27. Bullitt County replied, ECF No. 28. On November 18, 2016, Magistrate Judge Dave Whalin ordered Miller to respond to Bullitt County's motion for summary judgment by the extended date of December 8, 2016. Order 2, ECF No. 29. Because Miller responded to the motion for summary judgment by that date, this Court will deny Bullitt County's motion to dismiss for failure to comply with court order as moot. *See* Pl.'s Resp., ECF No. 30.

Bullitt County moved for summary judgment on all of Miller's claims against it, ECF No. 18. Miller responded, ECF No. 30. Bullitt County replied, ECF No. 31. For the reasons below,

the Court will grant summary judgment to Bullitt County on Miller's First and Fourteenth Amendment claims brought under 42 U.S.C. § 1983. Further, this Court will dismiss all of Miller's state law claims under the doctrine of sovereign immunity.

## II.   Summary Judgment Standard

A party moving for summary judgment must show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986). A genuine issue for trial exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* The Court must draw all factual inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III.   Undisputed Facts

Beginning around July 9, 2007, Miller worked as the Animal Control Director for Bullitt County. Verified Compl. ¶ 6, ECF No. 1. On July 10, 2007, Miller signed an "Acknowledgement of Receipt," acknowledging that (1) he received the Bullitt County Government Employee Handbook and (2) he was an at-will employee and could be terminated "with or without cause, at any time, so long as there is no violation of applicable federal or state law." Ex. A, ECF No. 18-2. Sometime thereafter, another employee, Defendant Williams, secretly video recorded statements made by Miller while at work. Verified Compl. ¶ 7, ECF No. 1; Ex. D, ECF No. 18-5; Ex. E, ECF No. 18-6. One of these videos shows Miller referring to another person as "Nigger Knox." Ex. D at 28:20, ECF No. 18-5. The other shows Miller saying that he "should have never hired" a woman. Ex. E at 22:55, ECF No. 18-6. These videos were released to news media and television stations. Verified Compl. ¶ 8, ECF No. 1. The Bullitt County Judge Executive placed

2

Miller on suspension for an indefinite period of time as a "result of alleged violations of the" Bullitt County Government Employee Handbook on April 17, 2015. Ex. B, ECF No. 18-3. His employment was terminated on May 27, 2015 and he was informed the next day. Ex. C, ECF No. 18-4; Verified Compl. ¶ 10, ECF No. 1.

IV.   Analysis

Miller alleges (1) violations of his First Amendment rights to free speech and freedom of association and his Fourteenth Amendment right to due process, claims brought under 42 U.S.C. § 1983, (2) wrongful termination, (3) outrageous governmental conduct, and (4) intentional and negligent infliction of emotional distress. Verified Compl., ECF No. 1. He seeks attorney fees and costs, compensatory and punitive damages, and "any and all other relief to which he may appear equitably entitled." *Id.* at 5. Bullitt County moves for summary judgment on all claims against it. Mem. Supp. Mot. Summ. J. 23, ECF No. 18-1. It asserts that:

> Plaintiff's claims against Bullitt County fail because: (1) Plaintiff did not engage in protected conduct because Plaintiff's speech did not touch upon a matter of public concern; (2) Plaintiff was an at-will employee and as such, he did not enjoy a protected property interest in continued employment; (3) the circumstances surrounding Plaintiff's termination are not excepted from Kentucky's general rule that at-will employee's [sic] may be terminated at any time with or without cause; (4) Plaintiff's claims for outrage/emotional distress are preempted by his claim for wrongful termination; (5) Plaintiff has not alleged and he cannot prove conduct of sufficient severity to support his claims for outrage/emotional distress; (6) Bullitt County is entitled to immunity from Plaintiff's state law claims; and, (7) Plaintiff fails to meet the minimum pleading requirements of Fed.R.Civ.P. 8.

Mot. Summ. J. 1–2, ECF No. 18.

A.   Federal Rule of Civil Procedure 8

Bullitt County asserts that Miller's allegations do not meet the minimum pleading requirements set out in Federal Rule of Civil Procedure 8. Mem. Supp. Mot. Summ. J. 22, ECF No. 18-1. "A pleading that states a claim for relief must contain . . . a short and plain statement

of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint must allege "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court accepts a complaint's well-pleaded facts as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The Court disagrees with Bullitt County. On its face, the complaint appears to set forth a plausible claim for relief. Miller alleges that he was an employee of Bullitt County, "a government organized and operating under the laws of the Commonwealth of Kentucky," thus sufficiently pleading that he was a public employee. Verified Compl. ¶¶ 2, 6, ECF No. 1. He alleges that Defendants secretly recorded him and that those recordings were released to the public in an effort to humiliate him, thus sufficiently pleading facts for outrage or intentional infliction of emotional distress. *Id.* ¶ 7, 8. He alleges that he was subsequently terminated, which, combined with his being a public employee, gives facts sufficient to give rise to retaliation or wrongful discharge claims. *Id.* ¶ 10. Thus, the complaint states a claim to relief that is plausible on its face. The complaint satisfactorily puts Bullitt County on notice of the activities they are to defend.

## B.  First Amendment Rights to Free Speech and Freedom of Association

Miller alleges that Bullitt County violated his right to free speech and freedom of association as guaranteed under the First Amendment to the United States Constitution. Verified Compl. ¶ 9, ECF No. 1. He brings this claim under 42 U.S.C. § 1983. *Id.* To establish a prima facie case for retaliation under the First Amendment, a plaintiff must prove: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff . . . ; and (3) there is a causal connection between elements one and two— that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Sowards v. Loudon Cty., Tenn.*,

4

203 F.3d 426, 431 (6th Cir. 2000) (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999)).

There are "two inquiries to guide interpretation of the constitutional protections accorded to public employee speech. The first requires determining whether the employee spoke as a citizen on a matter of public concern." *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006). "If the answer is no, the employee has no First Amendment cause of action based on his or her employer's reaction to the speech." *Id.* Only if the answer is yes does the inquiry continue. *Id.* "This determination is a question of law for the court to decide." *See v. City of Elyria*, 502 F.3d 484, 492 (6th Cir. 2007) (citing *Taylor v. Keith*, 338 F.3d 639, 643 (6th Cir. 2003)).

Typically, matters of "political, social, or other concern to the community" are considered matters of public concern. *Id.* (citing *Jackson v. City of Columbus*, 194 F.3d 737, 746 (6th Cir. 1999)). Thus, when speech involves "'issues about which information is needed or appropriate to enable the members of society to make informed decisions about the operation of their government,'" it involves matters of public concern. *Brandenburg v. Hous. Auth. of Irvine*, 253 F.3d 891, 898 (6th Cir. 2001) (citing *McKinley v. City of Eloy*, 705 F.2d 1110, 1114 (9th Cir.1983)). But "when a public employee speaks . . . upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." *Connick v. Myers*, 461 U.S. 138, 147 (1983).

"The inappropriate or controversial character of a statement is irrelevant to the question whether it deals with a matter of public concern." *Rankin v. McPherson*, 483 U.S. 378, 387 (1987). However, "[r]esort to epithets or personal abuse is not in any proper sense communication of information or opinion safeguarded by the Constitution." *Cantwell v.*

*Connecticut*, 310 U.S. 296, 309–10 (1940). One such racial epithet, "the word 'nigger[,]' is pure anathema to African–Americans. 'Perhaps no single act can more quickly alter the conditions of employment and create an abusive working environment than the use of an unambiguously racial epithet.'" *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 185 (4th Cir. 2001) (citing *Rodgers v. Western-Southern Life Ins. Co.*, 12 F.3d 668, 675 (7th Cir. 1993)). Under this line of reasoning, the Eastern District of Tennessee found that racial slurs which "imparted no socially or politically relevant message" were not protected conduct. *Warren v. Warrior Golf Capital, LLC*, 126 F. Supp. 3d 988, 994 (E.D. Tenn. 2015).

Bullitt County asserts that Miller's speech did not touch upon a matter of public concern, and thus was not protected conduct under the First Amendment public employee framework. Mem. Supp. Mot. Summ. J. 10, ECF No. 18-1. Miller insists that his speech touched on a matter of public concern because it constituted criticism of an elected official. Pl.'s Resp. 2, ECF No. 30. He further contends that because he has established his prima facie case of retaliation, the burden has shifted to Bullitt County and that "summary judgment is inappropriate unless [Bullitt County] can show some binding precedent that critiquing an elected official is not protected speech." *Id.* at 2–3. Finally, he mentions that Bullitt County's motion does not address his freedom of association claim. *Id.* at 3. In its reply, Bullitt County argues that Miller's burden shifting argument is "inapposite because it is based upon the errant assumption that [he] has established a *prima facie* case of First Amendment retaliation." Reply 5, ECF No. 31. As for the freedom of association claim, Bullitt County correctly points out that "freedom of association claims are analyzed under the identical standard as applicable to Plaintiff's freedom of speech claims." *Id.* at 6 (citing *Akers v. McGinnis*, 352 F.3d 1030, 1036 (6th Cir. 2003)).

6

This Court agrees that Miller has not established a prima facie case for First Amendment retaliation. In analyzing the context surrounding the comments Miller made, as well as the comments themselves, this Court does not find that he was speaking on a matter of public concern. Miller contends that he was merely critiquing an elected official when he called another employee "Nigger Knox." This racial slur was offered in the sentence, "I thought I've seen Nigger Knox's car riding around with no sign on it." Ex. D at 28:20, ECF No. 18-5. Nothing in this comment was a genuine criticism of an elected official, as Miller contends, nor does it otherwise relate to any matter of political, social, or other concern to the community. Miller's use of a racial slur to describe the employee is degrading in the extreme. It is a mere resort to epithets, which is not protected speech within the public employee's workplace. Miller offers no explanation whatsoever for his comments that he should never have hired a woman, and this Court finds no political or social value for this speech either. Thus, Miller's comments did not fall within the First Amendment's protection of public employees. Therefore, summary judgment on Miller's First Amendment claims will be granted.

## C. Fourteenth Amendment Right to Due Process

Miller alleges that Bullitt County violated his "right to due process and an opportunity to be heard as guaranteed under the Fourteenth Amendment to the United States Constitution." Verified Compl. ¶ 9, ECF No. 1. He brings this claim under 42 U.S.C. § 1983. *Id.* "There are two elements of a procedural due process claim: (1) the existence of a constitutionally protected property or liberty interest, and (2) a deprivation of this interest without adequate process." *Shelton v. Brown*, 71 F. Supp. 2d 708, 710 (W.D. Ky. 1998). A plaintiff "cannot avail himself of the safeguards of procedural due process unless he has been deprived of a property interest." *Id.* (citing *Board of Regents v. Roth*, 408 U.S. 564 (1972)). "The existence of a property interest

depends largely on state law." *Id.* (citing *Bailey v. Floyd Cty. Bd. of Educ.*, 106 F.3d 135, 141 (6th Cir. 1997)). "Government employment amounts to a protected property interest when the employee is 'entitled' to continued employment." *Bailey*, 106 F.3d at 141. In order to establish such a property interest, Miller "must be able to point to some statutory or contractual right conferred by the state which supports a legitimate claim to continued employment." *See id.* "In Kentucky, unless the parties specifically manifest their intention to condition termination only according to express terms, employment is considered 'at will.'" *Id.* "An at-will employee is subject to dismissal at any time and without cause; consequently, an at-will employee cannot effectively claim a protectable property interest in his or her job." *Id.*

Bullitt County argues that Miller was an at-will employee who had no property interest in his job. Mem. Supp. Mot. Summ. J. 13, ECF No. 18-1. Bullitt County offers the "Acknowledgement of Receipt" he signed as proof. *Id.* Miller's signature acknowledges that he was an at-will employee and could be terminated "with or without cause, at any time, so long as there [was] no violation of applicable federal or state law." Ex. A, ECF No. 18-2.

Miller has failed to point to any statutory or contractual right that entitled him to continued employment. Because an at-will employee enjoys no property interest in their employment, Miller has no cognizable claim under the Fourteenth Amendment. Miller attempts to offer the argument that the employee handbook does not prohibit "critiquing an elected official, even if personally, where the critique is designed, as this was, to critique the policies put in place by the elected official." Pl.'s Resp. 3, ECF No. 30. Thus, he argues, he "could not have been placed on notice by the employee handbook that political speech could be a legitimate basis for termination." *Id.* However, as this Court has already stated, Miller's speech was not political in nature and did not genuinely "critique an elected official." Rather, Miller's speech was

nothing more than a resort to racial epithets and personal abuse, rendering it unprotected under the First Amendment's public employee framework. Further, as an at-will employee, Miller did not need to be "on notice" that his speech could result in his termination. Instead, Miller, as an at-will employee, could have been fired for any reason or no reason at all, provided the termination did not violate any laws. Therefore, Miller enjoyed no property interest and his termination did not violate his Fourteenth Amendment procedural due process rights. The Court will grant summary judgment on this claim.

D.  Sovereign Immunity

Bullitt County asserts that it is immune from suit on Miller's state law claims of wrongful termination, outrageous governmental conduct, and intentional and negligent infliction of emotional distress. Mem. Supp. Mot. Summ. J. 17, ECF No. 18-1. "It is an inherent attribute of a sovereign state that precludes the maintaining of any suit against the state unless the state has given its consent or otherwise waived its immunity." *Yanero v. Davis*, 65 S.W.3d 510, 517 (Ky. 2001). The Court must decide whether Bullitt County is immune from suit on these state law claims before reaching the merits of the claims because "immunity entitles its possessor to be free 'from the burdens of defending the action, not merely . . . from liability.'" *See Breathitt Cty. Bd. of Educ. v. Prater*, 292 S.W.3d 883, 886 (Ky. 2009) (citing *Rowan Cty. v. Sloas*, 201 S.W.3d 469, 474 (Ky. 2006)).

"A county 'is a political subdivision of the Commonwealth . . . and as such is an arm of the state government. It . . . is clothed with the same sovereign immunity.'" *Jewish Hosp. Healthcare Servs., Inc. v. Louisville/Jefferson Cty. Metro Gov't*, 270 S.W.3d 904, 907 (Ky. Ct. App. 2008) (citing *Cullinan v. Jefferson Cty.*, 418 S.W.2d 407, 408 (Ky.1967), *overruled on other grounds by Yanero*, 65 S.W.3d at 527). Absent explicit statutory waiver, a county in

Kentucky is entitled to sovereign immunity. *See id.* While sovereign immunity does not apply to counties under federal case law, Kentucky's extension of sovereign immunity to counties applies to state law claims in federal court. *Doe v. Patton*, 381 F. Supp. 2d 595, 602 (E.D. Ky. 2005). Thus, if sovereign immunity applies here, it would render Bullitt County immune from the wrongful termination, outrageous governmental conduct, and intentional and negligent infliction of emotional distress claims.

"'Official immunity' is immunity from tort liability afforded to public officers and employees for acts performed in the exercise of their discretionary functions. It rests not on the status or title of the officer or employee, but on the function performed." *Yanero*, 65 S.W.3d at 521 (citing *Salyer v. Patrick*, 874 F.2d 374 (6th Cir.1989)). "Official immunity can be absolute, as when an officer or employee of the state is sued in his/her representative capacity, in which event his/her actions are included under the umbrella of sovereign immunity." *Id.* "[I]ndividuals sued in their official capacities stand in the shoes of the entity they represent." *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). "[A] plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself." *Graham*, 473 U.S. 159, 166. This logic extends to claims against governmental entities, like the Bullitt County Fiscal Court— the suit should be construed as against Bullitt County. *See Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994) (holding that a suit against the Jefferson County Police Department should be construed as a suit against Jefferson County); *see also Smith v. Flinkfelt*, No. 13-01-GFVT, 2013 WL 5467618, at *5 (E.D. Ky. Sept. 30, 2013) (holding that suit against Henry County Animal Control was suit against Henry County); *Gifford v. Bullitt County Jail*, No. 3:11-CV-P118-H, 2011 WL 1539795, at *1

(W.D. Ky. April 22, 2011) (holding that claims against Bullitt County Jail are claims against Bullitt County).

Miller's claims against Bullitt County Fiscal Court in its official capacity are claims against the county itself. As a county in Kentucky, Bullitt County has sovereign immunity from suit for state law claims. Miller has pointed to no statutory waiver of Bullitt County's immunity from state law claims in this case. Absent waiver, Bullitt County is immune from the wrongful termination, outrageous governmental conduct, and intentional and negligent infliction of emotional distress claims.

Miller responds to Bullitt County's assertion of sovereign immunity by arguing that all the claims in his case, including the state law claims, fall under 42 U.S.C. § 1983. Pl.'s Resp. 7, ECF No. 30. In its reply, Bullitt County correctly explains that § 1983 provides "redress for the violation of [a plaintiff's] federally granted rights by state actors," but not for the violation of state law. Def.'s Reply 11, ECF No. 31. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the *United States*, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (emphasis added); *see also Baker v. McCollan*, 443 U.S. 137, 146 (1979) (holding that § 1983 does not impose liability for tort law because "false imprisonment does not become a violation of the Fourteenth Amendment merely because the defendant is a state official"); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (holding that a medical malpractice claim cannot be brought under § 1983 because "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner"); *Voyticky v. Village of Timberlake, Ohio*, 412 F.3d 669, 678 (6th Cir. 2005) (holding that a claim for intentional

11

infliction of emotional distress cannot be brought under § 1983). Thus, Bullitt County is correct in saying that § 1983 does not apply to state law claims.

As a result, Bullitt County is immune from civil suit on state law claims under Kentucky sovereign immunity principles. Therefore, this Court cannot reach the merits of Miller's wrongful termination, outrageous governmental conduct, and intentional and negligent infliction of emotional distress claims. This Court will dismiss all of Miller's state law claims against Bullitt County.

V.   Conclusion

The Court will grant summary judgment to Bullitt County on Miller's First and Fourteenth Amendment claims brought under 42 U.S.C. § 1983. Further, this Court will dismiss Miller's wrongful termination, outrageous governmental conduct, and intentional and negligent infliction of emotional distress claims under the doctrine of sovereign immunity. The Court will deny Bullitt County's motion to dismiss as moot. The Court will enter an order in accordance with this memorandum opinion.

January 26, 2017

Charles R. Simpson III, Senior Judge
United States District Court

12